## SEALRIGHT-OSWEGO FALLS CORPORATION

v.

## UNITED STATES.

### No. 323-56.

United States Court of Claims.
July 16, 1958.

Jay W. Glasmann, Washington, D. C., for plaintiff. Richard B. Barker and Ivins, Phillips & Barker, Washington, D. C., were on the briefs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the briefs.

JONES, Chief Judge.

This is a suit to recover excess profits taxes paid for the years 1950, 1952, and 1953.

The plaintiff alleges that it increased the capacity of its business more than 50 percent during the base years December 31, 1946, to December 31, 1949, and that under the applicable statutes [1] and regulations issued pursuant thereto it is entitled to a refund of the taxes in question.

The parties have agreed on the amount of refund in the event it is found that plaintiff is entitled to recover. They have also agreed that plaintiff is entitled to recover if it increased its overall capacity to produce various types of paperboard containers and closures between December 31, 1946, and December 31, 1949, by 50 percent or more within the meaning of section 444 of the Internal Revenue Code of 1939, as amended.

The sole question, therefore, is a factual one—whether plaintiff during the base years in question increased the productive capacity of its business more than 50 percent. To qualify for relief under section 444 a number of showings are required. However, the parties have agreed that plaintiff has qualified in every respect except the one which is in question.

During the years involved in this proceeding plaintiff was engaged in the manufacture of various types of paperboard containers, milk bottle caps and hoods used by dairies and others for the sanitary bottling and packaging of milk, ice cream, and other liquids and moist foods. Plaintiff also leased filling, capping, and container-forming machines to dairies

[1] Section 444 Internal Revenue Code of 1939 (53 Stat. 1), as amended by the Excess Profits Tax Act of 1950, chap. 1199, 64 Stat. 1137.

and other customers for use in connection with its products.

The plaintiff manufactured simple paperboard caps for milk bottles which are about one inch in diameter and pasteboard thin. It also manufactured containers in varying amounts in the form of pint, quart, gallon, and larger containers for milk, ice cream, and other dairy and liquid products.

About 1940, plaintiff developed and patented a rectangular container that could be shipped flat, thus occupying much less space until such time as it was put into use. About four years were required for plaintiff's engineering department to design and produce the equipment to utilize fu. y the particular product. It was to be shipped in a knocked-down condition to the using dairy where it was assembled, filled, and sealed in one operation on machines developed by plaintiff and leased to the dairy plant. The product was made of the same material and used for the same purposes as the previous product of a similar size, but plaintiff was desirous of being in a better competitive position with other companies who were packaging for large dairies.

While the overall purposes of the containers and cartons remained substantially the same, their form and method of assemblying and shipment were changed —the overall purposes and character of the business remaining unchanged. However, much new equipment was required, including a large coating machine for applying the plastic resin to the paper; a lacquer mixing plant for mixing the lacquers; highspeed printing press for printing, scoring, and blanking out the sidewalls; a similar press for printing and blanking out the tops; a similar press for blanking the bottoms; and paper slicing machines. A new building was constructed to house the new equipment, a solvent recovery plant was constructed, and the plant and equipment were improved in many ways.

Measured in terms of the pounds of paperboard required to produce plaintiff's products at capacity levels of operation, plaintiff had increased its capacity for production by 68.87 percent during the base years in question. In terms of square feet of paperboard required to produce the capacity levels of operation, plaintiff had increased its capacity for production by 73.27 percent. In terms of the cost of paperboard required to produce at capacity levels of operation, plaintiff had increased its capacity for production by 75.47 percent during the base years in question. Defendant admits these percentage increases in capacity.

If any of these methods of measurement are used plaintiff has fully complied with the terms of the statute.

However, the defendant contends that the method of measurement should be to count each individual unit or separate article on the same basis: the paper cap to be sold to dairies for the purpose of capping milk bottles, and which could be cut in multiple quantities, should count the same as the actual paperboard containers, whether in pints, quarts, gallons, or larger sizes, which were wholly manufactured by plaintiff. Measured in this manner the productive capacity, notwithstanding the great increase in raw materials measured in pounds, linear feet, or raw material costs, would be only 9.86 percent for the base years in question.

Section 444 of the Internal Revenue Code of 1939, as amended, is one of the relief provisions of the Korean War excess profits tax law. It follows the pattern of the World War II excess profits tax act imposing a tax on that portion of taxpayer's earnings during the years of the Korean War which were in excess of a stated percentage of the corporation's average earnings during the years 1946 to 1949, or base period. Congress, however, recognized that the actual earnings in the base period of a corporation making substantial changes in its business during the base period was not a proper basis for determining the portion of its war-period earnings which should be subject to the excess profits tax. Sev-

eral relief provisions were included in the Korean War act, one of which was the increased capacity for production test for determining excess profits taxes.

The statute clearly makes the capacity for production the basic test. Section 40.444–2(a) of the regulations issued pursuant to the statute contains the following sentence:

"As used in section 444, the term 'capacity for production or operation' means the capacity to produce or to operate rather than the level of production or operation actually achieved."

Paragraph (b) of the same regulation provides in effect that an increase in capacity for production or operation is deemed to have occurred if the taxpayer establishes that it made an addition or additions to its facilities or replaced all or a part of its existing facilities, and that as a result of such addition or replacement its capacity for production or operation at the end of the base period was increased by 50 percent.

This subsection of the regulations also provides that,

"In determining capacity for production or operation, *the unit of measurement customary for the output of the particular kind of business shall be used,* such as tons, gallons, barrels, yards, or dozens." [Emphasis supplied.]

In the present case, it has been found as a matter of fact that it is customary in the plaintiff's industry to measure overall capacity for production in terms of quantity of paperboard consumed in the production operations. (See finding 30.) As we have indicated, by using such customary standard, plaintiff has met the overall production test regardless of whether the paperboard consumed is measured in terms of pounds, square feet or cost.

The only case cited by either party in the briefs is National Grinding Wheel Co. v. Commissioner, 1947, 8 T.C. 1278. This case seems to be inapplicable to the facts of the instant case. In that case there was a change in the nature of the business which was involved.

In the instant case, plaintiff was at all times a manufacturer of a variety of paperboard containers and closures used for the sanitary bottling and packaging of milk, ice cream, and other kinds of liquids and moist foods. The various types of production performed and the amount of materials and labor required to meet the terms of capacity are set out in findings 21 to 28, inclusive. The costs and changes, additions, improvements, and replacements are set out in findings 29 and 30.

It seems to us that measured on the basis customary to plaintiff's industry, or on any reasonable basis, the plaintiff has fully met the relief requirements of the statute.

In order to avoid these plain facts the defendant must be permitted to count a little round disc that is used as a plugged cap for milk bottles, and which can be cut by a stamping process in multiple quantities, the same as a Bulkan, which is a full paperboard container capable of holding quantities of ice cream, milk, or other liquids. A thousand of these little round discs require only 2.71 pounds of paperboard, while to make the complete Bulkan in the same numbers would require 479.54 pounds. To count one of these small disc articles on the same basis as the several larger articles, regardless of the amount of materials, cost, labor, or machinery involved, would be altogether unreasonable, nor would such a standard be consistent with that customarily employed in plaintiff's industry. The futility of such a test becomes apparent when it is realized that had the use of milk bottles rapidly increased, rather than slowly being displaced by paper containers, there might have been, under the item method of calculation, a more than 50 percent capacity increase with only some disc cutter machines added. Such a result, of course, could not have been accepted.

The plaintiff produces a variety of end products all of which are manufactured

almost 100 percent from paperboard. It does a large business.

When the entire record is considered and any reasonable basis of measurement is invoked the plaintiff has fully met the terms of the relief statute applicable to the base years in question.

The plaintiff is entitled to recover the sum of $526,047.45, and judgment will be entered in that amount, together with interest thereon as provided by law.

It is so ordered.

WASHINGTON, Circuit Judge, sitting by designation, and LARAMORE, MADDEN and LITTLETON, Judges, concur.